ELLIS, Judge.
This is a suit for damages for personal injuries and wrongful death arising out of *685 an automobile accident which happened on Louisiana Highway 27 at about 9:30 o’clock p. m. on September 8, 1972. A cane truck, owned by Lyes Bourg Truck Lines, operated by William Jasper, and leased to South Coast Corporation, being driven south, ran out of gas and stopped at the west edge of the southbound lane of the highway. Some time later, an automobile owned and operated by Joseph J. Bil-liot, Sr., also headed south approached the truck from the rear, and swerved into the northbound lane of traffic in an attempt to avoid striking the truck. The right rear of the Billiot vehicle struck the left rear of the truck, causing the automobile to spin around broadside in the northbound lane, where it was struck by a car operated by Leopold Gil. As a result of the collision, Mr. Billiot, and his young daughter, Charlotte Marie, were killed, and his wife, Wilma M. Billiot, and son, Joseph J. Billiot, Jr., were injured.
This suit was filed by Mrs. Billiot, individually, as natural tutrix of Joseph, Jr. and as administratrix of the estates of her deceased husband and daughter, seeking damages for the wrongful death of Mr. Billiot and Charlotte Marie, and for the personal injuries suffered by herself and her son.
Defendants named were Lyes Bourg, doing business as Lyes Bourg Truck Lines, William Jasper, South Coast Corporation, Aetna Casualty and Surety -Company, and Jim Walter Homes, Inc. Answer was filed denying negligence and pleading the negligence and contributory negligence of Mr. Billiot. Defendants also third partied the plaintiff in her various capacities, for contribution of one half of any damages for which they might be cast because of the negligence of Joseph J. Billiot, Sr. The suit was later voluntarily dismissed as to South Coast Corporation and Jim Walter Homes, Inc.
The case was tried before a jury and a verdict was rendered finding that both William Jasper and Joseph J. Billiot, Sr. were negligent, but that the negligence of Mr. Billiot was not a proximate cause of the accident. Damages totalling $100,000 were awarded to Mrs. Billiot individually, and $17,500 was awarded to Joseph J. Bil-liot, Jr. Judgment was signed against Bourg, Jasper and Aetna, in solido, in accordance with the verdict and they have appealed.
William Jasper testified that when he took over the truck, he checked the gas gauge and it read" full. When the truck stopped, only a few minutes after he began his trip, the gauge still showed full. He did not pull off the highway because he thought he could get the truck started again. He did pull the truck to the extreme edge of the travelled surface, however, leaving three or four feet between the truck and the center line of the highway. After attempting, unsuccessfully, to start the truck, he put out his reflectors, one about 75 feet behind the truck, one next to the cab, and one in front of the truck. He stated that he then moved the rear reflector a little further from the truck. He testified that during the entire time the truck was stopped on the road, all of his running lights, except the head lights were lit, and his emergency flashers were operating. He also testified that, after he put out the reflectors, he stood at the rear of the truck to flag traffic. He stated that he remained there except for three occasions when he renewed his efforts to start the truck.
The testimony of the other witnesses as to the condition of the lights on the truck before, during and after the accident is extremely conflicting. Alton Bouquet, who passed the truck heading south at about 9:00 p. m., testified that he saw the truck with dim lights on it as he approached. He did not see anyone flagging traffic, and saw no reflectors on the road.
Claude Bourg, son of defendant, Lyes Bourg, testified that he saw the lights on the stopped truck from across the bayou, and came over to see if he could give as *686 sistance. He determined that the truck was out of gas, although the gauge read full. He said that the clearance light, the running lights, and the front and rear flashers were all operating, and that the reflectors were out. He paced off 75 steps to the rear reflector after the accident. He went to get some gas, and when he returned, the accident had happened.
Wilford Brunet, another Bourg driver, passed the truck before the accident. The flashers and running lights were lit, and the driver was standing at the rear of the truck.
Louis Lecompte testified that he stopped to offer help to Jasper before the accident, and was told that Mr. Bourg was bringing gas. He saw the reflectors out, the running lights on and the flashers operating. He said Jasper was standing behind the truck.
Mrs. Sybil Mitchell, who was a passenger in Mr. Claude Bourg’s truck, confirmed his testimony relative to the lights on the truck.
David Altom was a passenger, in the rear seat of the Gil vehicle, which was involved in the accident. They passed the truck shortly before the accident heading south, and he said he saw no lights on it at that time, and did not see the driver. He saw a reflector 25 to 30 feet behind the truck on the centerline of the highway, and another by the cab of the truck. A few minutes later, they returned along the highway, heading north, and at that time, he observed no lights on the truck. As they passed the truck, they were involved in the collision with the Billiot vehicle.
Randal Hebert was driving North along the highway, ahead of the Gil vehicle. He said he saw the fog lights on the truck but did not notice any reflectors or flashing lights on the truck. He saw the driver standing in the door of the cab. The red tail lights of the truck were on. He passed the Billiot vehicle just after he passed the truck, and watched the accident take place in his rear view mirror. He immediately returned to the scene, and saw that the flashing lights on the truck were operating.
Mr. and Mrs. Louis Price, who were also driving north, ahead of Mr. Hebert, testified that they saw the truck when still half a mile from it. They saw some reflectors on the road marking out the truck, and the flashing lights. They turned into a driveway several hundred feet north of the truck, and the Billiot car passed them and they heard the crash. They immediately returned to the scene of the accident, and observed that the lights and flashers on the truck were still operating.
Mrs. Wilma Billiot, the plaintiff, testified that her husband was driving their car south on the highway at 55 to 60 miles per hour. She testified that there were no lights on the truck and that when they first observed it, it was too late to stop. On cross-examination, she testified that they were two or three car lengths past the south edge of Terrebonne High School when they first saw the truck. A survey in the record shows the distance from the school to the truck to be almost 900 feet.
Because the jury’s verdict is couched in terms of conclusions as to negligence and proximate cause, we do not have the benefit of their findings of fact, and must reach our own conclusions in that respect. Rowe v. Travelers Insurance Company, 253 La. 659, 219 So.2d 486 (1969).
With respect to the lights on the truck, only two witnesses, Mrs. Billiot and Mr. Altom testified that there were none. Mr. Altom saw the reflectors on the road. Mr. Bouquet, plaintiff’s witness, saw dim lights on the truck, some time before the accident. Mr. Hebert, plaintiff’s witness, saw fog lights on the front of the truck and the red tail lights of the truck immediately before the accident happened, although he did not observe the flashers. Mr. and Mrs. Price, defendants’ witnesses, saw the lights *687 of the truck from a distance of a half mile, observed the reflectors on the road, and saw the flashers operating, immediately before the accident.
The reflectors were observed by various other witnesses, and the rear reflector was estimated to have been located anywhere from 30 feet to 225 feet behind the truck.
From all of the above, we conclude that the preponderance of the evidence is to the effect that at least the running lights of the truck were lit at the time the accident happened, and that the reflectors were, in fact, placed on the highway.
R.S. 32:368(A) provides:
“A. Whenever any freight carrying vehicle, passenger bus, truck tractor, trailer, semi-trailer, or any motor vehicle pulling a house trailer or other vehicle, is disabled upon the traveled portion of any highway of this state, or the shoulder thereof, at any time when lighted lamps are required on vehicles, the driver of such vehicle shall display the following warning devicés upon the highway during the time the vehicle is so disabled on the highway except as provided in Subsection B of this Section:
(1) A lighted fuse, a lighted red electric lantern or a portable red emergency reflector shall be immediately placed at the traffic side of the vehicle in the direction of the nearest approaching traffic.
(2) As soon thereafter as possible, but in any event within the burning period of the fuse (15 minutes), the driver shall place three liquid burning flares (put torches), or three lighted red electric lanterns or three portable red emergency reflectors on the traveled portion of the highway in the following order:
(a) One, approximately 100 feet from the disabled vehicle in the center of the lane occupied by such vehicle and toward traffic approaching in that lane.
(b) One, approximately 100 feet in the opposite direction from the disabled vehicle and in the center of the traffic lane occupied by such vehicle.
(c) One at the traffic side of the disabled vehicle approximately 10 feet rearward or forward thereof in the direction of the nearest approaching traffic.”
R.S. 32:141(B) provides:
“B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.”
R.S. 32:314(B), which has been amended since the time of the accident, then provided :
“B. Whenever a vehicle is parked or stopped upon a roadway or shoulder adjacent thereto, whether attended or unattended, during the hours between sunset and sunrise and there is not sufficient light to reveal any person or object within a distance of 500 feet upon such highway, such vehicle so parked or stopped shall be equipped with one or more lamps meeting the following requirements :
(1) At least one lamp shall display a white or amber light visible from a distance of 500 feet to the front of the vehicle; and
(2) The same lamp or at least one other lamp shall display a red light visible from a distance of 500 feet to the rear of the vehicle; and
(3) The location of the said lamp or lamps shall always be such that at least one lamp or combination of lamps meeting the requirements of this section is installed as near as practicable to the side of the vehicle which is closest to passing traffic.
*688 The foregoing provisions shall not apply to a motordriven cycle.”
We think the record reflects that Jasper was in substantial compliance with R.S. 32:368(A) and R.S. 32:314(B), and that he had therefore “protected” traffic in accordance with R.S. 32-141 (B).
Neither do we believe that Mr. Jasper acted unreasonably in not pulling his truck onto the shoulder when it began to slow down. There were three gas tanks on the truck, and the gauge read full for the third tank. He was of the opinion that he could restart the truck by switching tanks.
We are of the opinion that Mr. Jasper was in compliance with the law, and was therefore not negligent in his behavior. We hold that the jury erred in holding otherwise. Since we have found the defendants not negligent, and therefore not liable, we need not consider the contributory negligence of Mr. Billiot.
The judgment appealed from is reversed, and there will be judgment in favor of defendants and against plaintiff, dismissing plaintiff’s suit at her cost.
Reversed and rendered.